WHYLAND vs. WEAVER.

In an action of ejectment, upon a lease in perpetuity reserving rent, with a right of re-entry in case of non-payment, brought by one claiming under the lessor, the plaintiff proved a regular transfer of title and interest from the lessor, which had come to and vested in the plaintiff, before suit brought. *Held*, that this chain of title, with possession of the property, was at least *prima facie* evidence that the possession was under that title, and became *actual* evidence of the fact of possession under that title when the last regular grantee in the line claimed the title and demanded the rent reserved, of the tenant in possession, and received from the latter a recognition of his right by a promise from him to pay the rent.

The tenant in possession cannot overcome such a title by showing title in himself from the same common source — the original lessor — if there is a want of connection between him and the common source.

Recitals in deeds to former tenants, of conveyances from the common source of title to their predecessors in interest, will not estop the plaintiff in such an action ; he not being a privy in the estate flowing through the defendant's chain of title, and the defendant and his successive grantors being strangers to the plaintiff's chain of title.

After a witness had testified that he knew the premises described in the lease under which the plaintiff claimed, and knew the adjoining lots, he was asked whether the lot described in the complaint was embraced in the boundaries of the lease. He answered that it was. *Held*, that the testimony was competent ; the fact inquired of being one which any witness was legally competent to answer, who was acquainted with the land, and the adjoining lands, and their description and locality as connected with other farms or monuments.

THIS was an action of ejectment tried at the Rensselaer circuit, in June, 1869, before Justice PECKHAM and a jury.

It appeared upon the trial, that on the 4th day of October, 1793, Stephen Van Rensselaer and Abraham Peek, executed an indenture by which Stephen Van Rensselaer, in the usual form, granted lands in Rensselaer county to Peek, reserving rents, &c., to be paid at a time and place therein specified, and Peek covenanted to pay, with the usual clause, giving right to re-enter upon non-payment, default, &c. That default had been made, and the usual fifteen days' notice of intention to re-enter properly served before commencement of action. That the rights thus reserved to Van

Rensselaer, and all of Van Rensselaer's interest therein, had been duly transferred to, and vested in the plaintiff.

The answer conceded that the defendant held the lands described in the complaint. It also appeared that the defendant occupied the land; and there was oral evidence that he or his grantor had promised, within three or four years of the time of trial, to pay the rent. Upon the foregoing facts there was no conflict or contradiction.

The plaintiff based his right to recover upon the claim that 30 acres of the 129 acres conveyed from Van Rensselaer to Peek, (and which 30 acres was described in the complaint,) was in default in the payment of its proportion of the rent reserved.

The complaint alleged that this 30 acres was a part of the Christian Simmons farm — was formerly owned and possessed by him, and by his heirs at law, and was conveyed by them to Matthew Myers; and by the latter and wife conveyed to John D. and Silas Myers, who conveyed to the defendant.

The principal dispute upon the trial was, whether the said 30 acres was included in the lease from Van Rensselaer to Peek.

The judge at the circuit directed a verdict for the plaintiff, upon a case to be made and first heard at the General Term.

*E. Wooster*, for the plaintiff.

*Colvin & Bingham*, for the defendant.

*By the Court*, P. POTTER, J. On the trial, the plaintiff proved a conveyance from Stephen Van Rensselaer to Abraham Peek, dated in October, 1793, by lease in perpetuity reserving rents, with a fixed annual day of payment, and containing the usual provision of the right of re-entry upon default of payment. He also proved, as the case states, the interest of Van Rensselaer

to have come to, and become vested in the plaintiff, before the commencement of this action ; also, that the 30 acres described in the complaint was included within and a part of the lands described in the Peek lease.  He proved possession of the premises for 25 or 30 years by a succession of occupants, as follows : Christian Simmons, who got possession of John M. Haynor and wife, of Christian Simmons by his heirs, then by Matthew Myers from the heirs of Simmons, and then by Silas D. Myers and John B. Myers, and from the latter to the defendant ; and that Silas D. Myers and Weaver admitted the premises in question were a part of the Peek lease.   That rent was demanded of Weaver and Silas D. Myers while they were in possession, and at a time, some three or four years before the commencement of the action ; that they promised to pay it, but that it has never been paid.   And the service of the fifteen days' notice upon the defendant was admitted.

Upon this proof, the plaintiff, when he rested, was entitled to recover.

The proof on the part of the defendant was four deeds, viz.: 1st.  Deed from Joseph F. Simmons and Daniel C. Simmons and their wives, and Patience Simmons to Matthew Myers, in April, 1851, conveying divers parcels of land, and, among other parcels, that of 30 acres of land, being part of premises theretofore conveyed by Stephen Van Rensselaer to Standart and John Miller, and John C. Miller.   In respect to the description of the premises, the boundaries were substantially the same as those described in the complaint.   2d.  A deed from the said Joseph F. Simmons and Daniel C. Simmons as executors of Christian H. Simmons, to the said Matthew Myers, of the same premises, by the same description as in the last deed dated in April, 1851.   3d.  A deed from Matthew Myers and wife to Silas D. Myers and John D. Myers, by the same description as to the premises, as in the two foregoing deeds, dated in February, 1861,

and 4th. A deed of the same description of premises as in the three foregoing deeds from Silas D. Myers and John D. Myers to him, defendant, dated in April, 1865.

These four deeds severally are made subject to the payment of rents reserved to Van Rensselaer, but each of them describe the premises as originally leased by Van Rensselaer to Standart Miller, John Miller and John C. Miller, without giving date to such original lease. The identification of the land is claimed by its description in these deeds, and as coming from Christian Simmons.

After a cross-examination of Mr. Wooster, one of the plaintiff's witnesses, by the defendant, he was re-examined by the plaintiff and asked, "What do you know about the Standart Miller, John Miller and John C. Miller lease?" Answer — "Could not find any such; there is no such lot of land lying in the neighborhood of this lease to-day by actual survey. I took Mr. Patton, surveyor from Troy, to-day, and I find that the lot described in the complaint lies in the boundaries of the Abram Peek lease." The defendant objected to this testimony as incompetent; the court overruled the objection, and the defendant excepted.

At the close of the testimony the defendant requested the court to hold and instruct the jury, that the evidence failed to show that the land owned by the defendant was any part of the land claimed by the plaintiff; and that the defendant was entitled to their verdict. The court refused to so hold and instruct the jury, and the defendant excepted.

The defendant then requested the court to submit the question to the jury upon the evidence in the case, to find whether the land, owned and occupied by the defendant, was the land claimed by the plaintiff, or any part thereof. The court refused to submit the question to the jury, and the defendant excepted.

The defendant then requested the court to hold that

the alleged rents had been released and discharged or extinguished, and the premises held adversely thereto by the defendant, and to so instruct the jury and direct a verdict for the defendant. The court refused to so hold and instruct the jury, and the defendant excepted.

The defendant then requested the court to submit the question to the jury, upon the evidence in the case, to find whether or not the premises were held by the defendant adversely to the claim of the plaintiff, and released and discharged of the rents claimed. The court refused to submit the question to the jury, and the defendant excepted.

The defendant then requested the court to decide as a matter of law, and to instruct the jury, that the plaintiff was not the owner of the premises claimed, and had no title thereto, and that the defendant was entitled to their verdict. The court refused to so hold and instruct, and the defendant excepted.

The defendant then requested the court to hold and instruct the jury, that the defendant was the owner of the premises in his occupation at the time of the commencement of the action, and entitled to a verdict in his favor. The court refused to so hold and instruct the jury, and the defendant excepted.

The defendant then requested the court to submit the evidence to the jury to find, as a question of fact, whether the plaintiff or the defendant was the owner of the premises at the commencement of the action. The court refused to submit the question to the jury, and the defendant excepted.

The court then instructed the jury that the plaintiff was entitled to recover possession of the premises, and the defendant excepted. The jury so returned their verdict as instructed; and the court ordered that judgment be entered thereon in favor of the plaintiff.

If we are to take the case as true, there was in proof a regular transfer of title and interest from Van Rens-

Whyland v. Weaver.

selaer in the Peek contract, which had come to and vested in the plaintiff before suit brought.    This claim of title, with possession of the property, is, at least, *prima facie* evidence that the possession was under that title, and becomes *actual* evidence of the fact of possession under that title, when the last regular grantee in the line claims the title, and demands the rent reserved of the possessor, and receives from the tenant in possession a recognition of his right, by a promise from him to pay the rent.

What then is the evidence by which it is claimed that the plaintiff's title is overcome ?

It is claimed by the defendant, through another chain of title, from the same common source.    But in this he fails for want of connection with the common source. He traces this chain no farther back than to the heirs of Christian Simmons, in the years 1850 and 1851.    True, those deeds do recite that the premises had theretofore been conveyed by Stephen Van Rensselaer, the common source of title, to the Millers ; but this recital does not estop the plaintiff.    He is not a privy in the estate flowing through that chain of title, if such title ever existed. The defendant, and his successive grantors, are strangers to the plaintiff's chain.    To defeat the plaintiff he was bound to connect his grantors with the Peek estate, or to show that the land described in the complaint is no part of the Peek estate.    He did not do this on the trial ; and stopping when he did, he gave no evidence tending to prove either of these facts.    He did not prove that the defendant or his grantors were privies in blood, privies in estate, or privies in law with the plaintiff and his grantors.    And if, indeed, both chains of title could have been traced to the same source by regular lines of conveyance, it would doubtless have been necessary, even then, for the defendant to have shown his title was anterior in date, to that of the plaintiff, to have defeated him.

If we are right, in this view of the law, the judge cor-

rectly refused to charge the jury as asked, in the two first requests to charge.

In the defendant's third request of the judge, his proposition was compound; "first, that the alleged rents had been released, discharged, or extinguished." There was no evidence of this in the case; and the judge could not, therefore, so hold. This could only be done by the real owner. It could not be done except by Van Rensselaer, while he was the landlord, or by some grantee, heir, or assignee, afterwards. The other part of the defendant's request to charge, "that the premises were held adversely thereto by the defendant, and to so instruct the jury, and direct a verdict for the defendant," seems to be based upon the first part of the proposition, and must fall with it. The distinct question of adverse holding is presented in the next proposition to charge, which was also a compound proposition; first, to submit it to the jury to find whether or not the premises were held by the defendant adversely to the claim of the · plaintiff, and released and discharged of the rents. There was no such evidence in the case as would authorize the judge so to charge. The claim of the defendant, under title shown, was less than twenty years; nor did he show its occupation, cultivation or improvement, as required by statute. He set up no claim of holding adversely, in his answer; and according to section 81 of the Code, the plaintiff was to be presumed to have been in possession within the time required by law, and that the defendant was holding under his title. The judge correctly refused to charge and submit to the jury, as requested.

The three remaining propositions, which the judge was requested to charge, are without merit, and do not call for discussion. There was no conflict of fact in the evidence which required a submission to the jury.

The only remaining question, to be examined, is the overruling, by the judge, of the objection of the defend-

Whyland *v.* Weaver.

ant, of the testimony of Mr. Wooster, at the end of the case. The objection was general; it did not specify the portion objected to; and if it applies to all of his testimony, it was not good as a general objection, because a part of the testimony was unobjectionable. Besides, it was not a motion to strike out the evidence, but an objection to evidence already given, as incompetent. The testimony itself was competent, though the witness might not have been competent to give that character of evidence. The objection was not sufficiently specific, or in proper form, to meet the case. The same witness had in an earlier stage of the trial testified, in effect, to the same fact, and to which the like objection had been made; and I am inclined to think the testimony was without legal objection, if the objection was in due form. The witness had testified that he knew the location of the premises described in the Peek lease, and knew the adjoining lots. The lease before that had been in evidence. He was then asked whether the lot described in the complaint was a part of the Peek lease, and he answered that it was. This is a fact that any witness was legally competent to answer who was acquainted with the land, and the adjoining lands, its description and locality as connected with the other farms or monuments. I do not think there was any error in these rulings, if the objection had been made specific, and in due form.

I think the plaintiff is entitled to judgment.

MILLER, P. J., concurred.

PARKER, J., concurred in the result.

Judgment for the plaintiff.

[THIRD DEPARTMENT, GENERAL TERM at Binghamton, December 2, 1873. *Miller, P. Potter* and *Parker*, Justices.]